IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRIANNE H.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

Civ. No. 3:19-cv-00501-SU

**OPINION & ORDER**

SULLIVAN, Magistrate Judge:

Plaintiff Terrianne H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. All parties have consented to magistrate judge jurisdiction in this case. ECF No. 17. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

**BACKGROUND**

On September 2, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 1, 2014. Tr. 15. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 25, 2017. *Id.* On March 26, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 27. The Appeals Council denied

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Tr. 1.  This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

**THE ALJ'S FINDINGS**

The ALJ performed the sequential analysis.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 1, 2014.  Tr. 17.  The ALJ determined Plaintiff had the following severe impairments: chondromalacia and osteoarthritis of the bilateral knees; a history of a Baker's cyst in the right knee; a history of deep vein thrombosis of the right lower extremity; and chronic pain syndrome.  *Id.*  The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment.  Tr. 18.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional restrictions: she can occasionally climb ramps and stairs, but can never climb ropes, ladders, or scaffolds; she can occasionally balance, stoop, crouch, crawl, and kneel; she should be able to change positions between sitting and standing such that she sits up to 6 hours a day and stands and walks up to 3 hours a day; she should avoid concentrated exposure to vibrations and hazards; she should be able to periodically elevate her legs for 10 minutes at a time during breaks or under her desk to knee level under her work station.  Tr. 18.

Plaintiff was 44 years old on the alleged onset date.  Tr. 26.  She has at least a high school education and is able to communicate in English.  *Id.*  The ALJ determined that Plaintiff was unable to perform her past relevant work.  Tr. 25-26.  At step five of the sequential analysis, the ALJ determined that Plaintiff was able to perform work as an assembler, a laundry sorter, and a mail sorter.  Tr. 26-27.  Accordingly, the ALJ determined Plaintiff was not disabled.  Tr. 27.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.  *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d

771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation,

courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*,

53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, cannot affirm the

Commissioner's decision on a ground that the agency did not invoke in making its decision.

*Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).  Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless. *Id.* at 1055–56.  "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*

*v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom

testimony and (2) improperly rejecting the opinion of an occupational therapist.

### I.      Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony.  To

determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis.

20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce

objective medical evidence of an underlying impairment that could reasonably be expected to

produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the

second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that she stopped working in 2014 after injuring her leg. Tr. 40-41. She testified that she takes 4 or 5 hours to do her housework and that she spends her days watching television, visiting with neighbors, playing video games, and writing. Tr. 44. The pain "varies a little bit," lasting for weeks before she'll experience "a few good days." Tr. 45. The pain regularly interferes with her ability to concentrate. Tr. 46.

Plaintiff elevates her legs to reduce swelling. Tr. 45. Plaintiff estimated that she elevates her legs every 2 to 3 hours and that she keeps them elevated for an hour or more at a time. Tr. 46. Plaintiff estimated that she could sit for between half an hour and an hour before needing to change position. *Id.*

Plaintiff testified that she ambulates using a wheelchair, either by pushing the wheelchair or by being pushed by a friend. Tr. 46-47. Plaintiff has a walker and a cane but does not use them because she finds the walker awkward and is able to stand more upright using the wheelchair. Tr. 46-48. Plaintiff has difficulty getting on her knees or squatting down and testified that her knees

sometimes go out.  Tr. 47.  Plaintiff testified that her knees will probably go out after 4 hours of pushing her wheelchair.  *Id.*  Plaintiff testified that she will go to a nearby grocery store or to visit her neighbors and get fresh air.  *Id.*  Sometimes Plaintiff goes to the church next door to her apartment building, pushing her wheelchair.  *Id.*

The ALJ found that while Plaintiff "alleges disabling symptoms of pain and other symptoms, the overall medical evidence record suggests that her abilities are not as compromised as suggested."  Tr. 19.  The ALJ found that Plaintiff's subjective symptom testimony was not entitled to full weight because of (1) conflict with "the overall medical record, including imaging showing the claimant's deep vein thrombosis had resolved, evidence of deconditioning and no more than a mildly antalgic gait,"; (2) Plaintiff's failure to follow multiple recommendations from her treatment providers; (3) indications that the claimant could walk for extended periods and climb steps; and (4) Plaintiff's ability to independently manage her activities of daily living.  *Id.*

## A.  Conflict with the Medical Record

The ALJ's first reason for discounting Plaintiff's testimony concerns conflict with the objective medical evidence.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161.

With respect to Plaintiff's mobility issues, the Commissioner points to treatment notes from May 2014 indicating normal range of motion and strength with a lack of edema, although the treatment note indicates right knee pain and swelling in the right leg.  Tr. 339.  In June 2014, Plaintiff's right knee was found to be painful to move.  Tr. 478.  In December 2014, Plaintiff's

treatment notes record a "mild" limp on her right leg, with a mildly decreased heel/toe gait on the right. Tr. 1943. The same treatment note indicates that Plaintiff reported using the stairs to climb to and from her third-floor apartment, despite the availability of an elevator. *Id.*

Treatment notes from January 2015 indicate mild antalgia, which is lessened with the use of a straight cane. Tr. 1978. A March 2015 treatment note also found mild antalgia. Tr. 2197. In July 2015, Plaintiff denied joint pain, joint stiffness, joint swelling, or muscle weakness. Tr. 2349. Another July 2015 treatment note found edema and tenderness, but Plaintiff exhibited a normal range of motion. Tr. 2273. Treatment notes from December 2015 indicate mild pain and limitation of the right knee flexion at the end range but found Plaintiff's gait "unremarkable for clinical distances." Tr. 2983. Plaintiff's treatment notes from February 2016 also indicate "unremarkable" gait in and out of the examination room. Tr. 3003. Treatment notes from December 2016 indicated a normal range of motion with no edema or deformity. Tr. 3036. Treatment notes from July 2017 similarly indicate a lack of edema in Plaintiff's knees. Tr. 3050.

Upon review of the record, the Court concludes that the ALJ reasonably considered the objective medical evidence in considering Plaintiff's testimony.

**B. Failure to Follow Treatment Recommendations**

In considering a plaintiff's subjective symptom testimony, the ALJ may consider on an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina*, 674 F.3d at 1113-14. In this case, Plaintiff's physical therapy treatment notes attributed slow progress to limited exercise at home. Tr. 2336. In September 2015, Plaintiff reported that she was only engaging in home exercise "on and off," and the notes indicate that consistency with the home program "could be better." Tr. 2337-38. By February 2016 Plaintiff had stopped coming to her physical therapy sessions and was discontinued from services. Tr.

3028.  In May 2016, Plaintiff and her physician "discussed the use of compression stockings and physical therapy, which [Plaintiff] repeatedly declines."  Tr. 3073.

On this record, the Court concludes that the ALJ reasonably considered Plaintiff's failure to follow through with the recommended course of physical therapy.

### C.  Evidence of Improvement

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  In this case, the parties agree that Plaintiff's deep vein thrombosis eventually resolved.  Pl. Br. 6, ECF No. 13; Def. Br. 4, ECF No. 14.   Plaintiff's physical therapy notes show that Plaintiff reported improvement with physical therapy.  Tr. 2342.  Treatment notes also indicated that Plaintiff "responded well to initial PT intervention," and her "movement patterns and strength/motor control are improving as is her R knee pain and activity tolerance."  Tr. 2343.  A report from September 2015 indicates that Plaintiff was "progressing towards" a goal of walking for 60 minutes for community ambulation.  Tr. 2338.  In October 2015, Plaintiff reported that she "feels like she is getting better functionally," and that her friends reported that she was improving as well.  Tr. 2652-53.

In May 2016, Plaintiff rated her pain as "mild-moderate with medications."  Tr. 2073.  In December 2016, Plaintiff's treatment notes indicated that she had "good relief" from her pain medication with no side effects.  Tr. 3035.

Considered in conjunction with the medical treatment notes discussed in the previous section, the ALJ reasonably found that Plaintiff experienced improvement, which undermined her testimony concerning the severity of limitations.

### D. Activities of Daily Living

Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In the present case, Plaintiff reported that she is independent in her activities of daily living and in cleaning her house and that she took the stairs to her apartment despite the availability of an elevator. Tr. 1943. In July 2017, Plaintiff reported that she experiences pain after 4 to 6 hours of walking. Tr. 3049. Although the record indicates Plaintiff experiences difficulty functioning, the ALJ reasonably considered the contradiction between Plaintiff's testimony about her symptoms and her activities as reflected in the treatment notes.

Taken together, the Court concludes that the ALJ gave sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## II.    "Other" Source Testimony

Plaintiff contends that the ALJ erred by discounting the opinion of occupational therapist Trevor Tash. Occupational therapists are considered "other sources," for purposes of the disability analysis. *Doney v. Berryhill*, 728 F. App'x 687, 690 (9th Cir. 2018). Their opinions must be evaluated, and "the ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Ghanim*, 763 F.3d at 1161 (internal quotation marks and citation omitted).

Mr. Tash performed a physical capacity evaluation for Plaintiff on September 14, 2017. Tr. 3085-90. Mr. Tash opined that Plaintiff could sit for an hour at a time and could sit for 3 hours

in an 8 hour day and that Plaintiff could stand or walk for 30 minutes at a time and for 1.5 hours

in an 8 hour day.  Tr. 3087.  Mr. Tash opined that Plaintiff had a "minimal" capacity to kneel,

squat, or crawl and could occasionally climb stairs.  Tr. 3088.  Mr. Tash concluded that Plaintiff

was able to work part-time in the light range of physical demand.  Tr. 3089.  Mr. Tash reported

that the "brevity of the evaluation prohibited testing of postural endurance (sit/stand/walk)," and

that his projections were "based on professional judgment considering diagnosis, observed

behavior and worker report."  Tr. 3090.

The ALJ gave "some weight" to Mr. Tash's opinion, "as he admitted that the brevity of the

examination prohibited an accurate testing of the claimant's ability to sit, stand and walk

throughout a day  and that his opinion is based partly on projections and the claimant's report."

Tr. 23.  The ALJ noted that Mr. Tash's opinion "does not accord with the overall medical evidence

record, including imaging showing the claimant's deep venous thrombosis had resolved, evidence

of deconditioning and no more than a mildly antalgic gait, the claimant's failure to follow multiple

recommendations from her treatment providers, indications that the claimant could walk for

extended periods, climb steps and manage her activities of daily living independently as well as

inconsistent statements the claimant made in her testimony, to her providers and to Mr. Tash."  *Id.*

The ALJ also noted that Plaintiff did not ask to stop and elevate her legs during her evaluation

with Mr. Tash and that she did not present with "significant observable edema as a result of

participating in the physical capacity evaluation," despite Plaintiff's report that she elevates her

legs every three hours while at home, "suggesting that perhaps the claimant may have overstated

her own limitations."  *Id.*

The ALJ's reasons for discounting Mr. Tash's opinion largely echo the ALJ's reasons for

discounting Plaintiff's own subjective symptom testimony.  As noted in the previous section, the

record supports the ALJ's conclusion concerning Plaintiff's subjective symptom testimony.  This

supplies a germane reason for discounting Mr. Tash's opinion.  *See Molina*, 674 F.3d at 1104

(when the ALJ provides clear and convincing reasons to reject a claimant's testimony, it follows

that the ALJ also gave germane reasons for rejecting similar testimony from other witnesses).  The

Court therefore concludes that the ALJ did not err in discounting Mr. Tash's report.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is

AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this 17th day of August 2020.


/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge